# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41169-2013

STATE OF IDAHO,               )
                             )      **Boise, September 2014 Term**
        Plaintiff-Appellant,      )
                             )      **2014 Opinion No. 127**
v.                          )
                             )      **Filed: December 2, 2014**
DENNIS JOHN HALSETH,     )
                             )      **Stephen W. Kenyon, Clerk**
        Defendant-Respondent.  )
                             )

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County.  Hon. Benjamin R. Simpson, District Judge.

The order of the district court is <u>affirmed</u>.

Kenneth K. Jorgensen, Deputy Attorney General, Boise, argued for appellant.

Justin M. Curtis, Deputy State Appellate Public Defender, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Kootenai County from an order granting a motion to suppress the results of a warrantless blood draw from a driver suspected of driving under the influence of alcohol on the ground that an implied consent statute is not an exception to the warrant requirement announced in *Missouri v. McNeely*, 569 U.S. ___, 133 S.Ct. 1552 (2013).  We affirm the granting of the motion to suppress.

## I.
## Factual Background.

On November 5, 2012, a Post Falls police officer was searching for a gray truck with stolen Washington license plates.  He located and began to follow the truck, and he confirmed that the license plate on it was stolen.  The truck stopped in a parking lot in Post Falls, and the officer told the driver, later identified as Dennis Halseth (Defendant), to stay in the vehicle.

Defendant drove away, with the officer in pursuit. However, the officer had to terminate the pursuit when his vehicle was struck by another vehicle.

Defendant was stopped and arrested in Washington by a Washington state trooper. The trooper asked Defendant to complete voluntary field sobriety tests, and Defendant refused. The trooper then transported Defendant to a hospital in Spokane, Washington, to have his blood drawn for evidentiary testing. Defendant protested, stating: "You can't take my blood! I refused! How can you just take it without permission?" Despite his protests, the hospital technician drew blood samples from each of Defendant's arms. No search warrant was obtained prior to the blood draws.

The State of Idaho charged Defendant with several crimes including driving while under the influence of alcohol, which would be a felony because of his prior convictions. Defendant moved to suppress the evidence on the ground that he did not consent to the warrantless search. He did not contend that the trooper lacked probable cause to believe that he had been driving under the influence of alcohol.

In light of the decision of the United States Supreme Court in *McNeely* the State did not argue that the natural dissipation of alcohol in the bloodstream was an exigent circumstance justifying a warrantless search, nor did it argue that there were any other exigent circumstances justifying the search.[1] The State argued that both Washington and Idaho had statutes providing that persons who drove on public roads impliedly consented to a test for alcohol concentration in their blood; that in *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989), this Court held there was no legal right to withdraw that implied consent; and that in *State v. Diaz*, 144 Idaho 300, 160 P.3d 739 (2007), this Court held that the implied consent included a blood draw. The district court granted the motion to suppress, reasoning that *McNeely* held that whether a warrantless blood test of a person suspected of driving under the influence of alcohol is reasonable must be determined based upon the totality of the circumstances in each case and that "it would be antithetical to interpret the *McNeely* opinion as permitting warrantless blood draws simply because a state has legislation that allows such action." The State timely appealed, and we affirm granting of the motion to suppress.

---

[1] In *McNeely*, the Supreme Court stated that "exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." *Id*. at ___, 133 S.Ct. at 1563.

## II.
## Analysis.

In *Breithaupt v. Abram*, 352 U.S. 432 (1957), the United States Supreme Court held that a warrantless blood draw from a person suspected of driving a motor vehicle while under the influence of alcohol did not violate the Fourth Amendment to the Constitution of the United States because that amendment did not apply to the States. *Id*. at 434. The Court also held that the blood draw did not violate due process because "there is nothing 'brutal' or 'offensive' in the taking of a sample of blood when done, as in this case, under the protective eye of a physician." *Id*. at 435. The Court stated that "[t]he blood test procedure has become routine in our everyday life" and that "a majority of our States have either enacted statutes in some form authorizing tests of this nature or permit findings so obtained to be admitted in evidence." *Id*. at 436. The Court concluded by stating:

> Furthermore, since our criminal law is to no small extent justified by the assumption of deterrence, the individual's right to immunity from such invasion of the body as is involved in a properly safeguarded blood test is far outweighed by the value of its deterrent effect due to public realization that the issue of driving while under the influence of alcohol can often by this method be taken out of the confusion of conflicting contentions.

*Id*. at 439-40. Based upon *Breithaupt* and other authorities, this Court held in *State v. Bock*, 80 Idaho 296, 328 P.2d 1065 (1958), that where intoxication was evidence of reckless disregard in an involuntary manslaughter case arising out of the operation of a motor vehicle, "the accused has no constitutional right to refuse to submit to a reasonable search and examination of his person, including an examination of his blood in the manner authorized by law." *Id*. at 306, 328 P.2d at 1071.

The United States Supreme Court later changed its mind regarding the application of the Fourth Amendment to the States, and in *Mapp v. Ohio*, 367 U.S. 643 (1961), the Court held that the Fourth Amendment and the Court's exclusionary rule did apply to the States. However, in *Schmerber v. California*, 384 U.S. 757, 770-71 (1966), the Court held that the natural dissipation of alcohol in the bloodstream justified a warrantless blood draw as an appropriate incident to the lawful arrest of a person for the offense of driving while under the influence of alcohol. In reliance on *Schmerber*, this Court held in *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210

3

(1989), that "the destruction of the evidence by metabolism of alcohol in the blood provides an inherent exigency which justifies the warrantless search." *Id*. at 370, 775 P.2d at 1212.

The United States Supreme Court again changed its mind, and in *McNeely* it held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." 569 U.S. at ___, 133 S.Ct. at 1568. The Court did not explicitly address the efficacy of implied consent statutes. That issue is now before us.

In *State v. Diaz*, 144 Idaho 300, 160 P.3d 739 (2007), we affirmed the denial of a motion to suppress the results of a blood test by a driver who verbally protested the blood draw. He argued "that death or serious bodily injury is required to justify an involuntary blood draw under the exigency exception to the warrant requirement." *Id*. at 302, 160 P.3d at 741. We held that exigency was not the only applicable exception to the warrant requirement, but that consent is also a well-recognized exception. *Id*. We concluded that the driver had already given his consent under Idaho's implied consent statute, which included consent to a blood draw. *Id*. at 303, 160 P.3d at 742. However, in *Diaz* the driver did not raise the issue of whether any implied consent based upon the statute could be withdrawn or was an exception to the warrant requirement.

In *Aviles v. State*, 385 S.W.3d 110 (Tex. App. 2012), the Court of Appeals of Texas upheld the denial of a motion to suppress evidence of the blood specimen of a defendant charged with felony driving while intoxicated even though the blood sample was obtained without consent and without a warrant. The sole basis of the court's decision was that "[t]he Texas Transportation Code expands the State's ability to search and seize without a warrant, providing implied consent to obtain blood samples from persons suspected of driving while intoxicated, in certain circumstances, even without a search warrant." *Id*. at 115. The United States Supreme Court granted the defendant's petition for a writ of certiorari, and it vacated the judgment and remanded the case for further consideration in light of *McNeely*. *Aviles v. Texas*, ___ U.S. ___, 134 S.Ct. 902 (2014). There is no logical reason for the Court's action unless a majority concluded that Texas's implied consent statute did not justify a warrantless blood draw.

In *McNeely*, the Court stated: "The State properly recognizes that the reasonableness of a warrantless search under the exigency exception to the warrant requirement must be evaluated based on the totality of the circumstances." 133 S.Ct. at 1560. The State contended that

"whenever an officer has probable cause to believe an individual has been driving under the influence of alcohol, exigent circumstances will necessarily exist because BAC evidence is inherently evanescent." *Id*. The Court rejected that proposed *per se* rule and stated that it "fails to account for advances in the 47 years since *Schmerber* was decided that allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple." *Id*. at 1561-62. The Court noted, "Well over a majority of States allow police officers or prosecutors to apply for search warrants remotely through various means, including telephonic or radio communication, electronic communication such as e-mail, and video conferencing." *Id*. at 1562. It stated that "technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion, are relevant to an assessment of exigency. That is particularly so in this context, where BAC evidence is lost gradually and relatively predictably." *Id*. at 1562-63.

The Court was aware of the magnitude of the drunk driving problem. However, it stated that "the general importance of the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case." *Id*. at 1565. The majority in *McNeely* did mention implied consent laws, including Missouri's. It did not do so, however, in the context of obtaining a blood sample from the driver to use as evidence in a criminal prosecution. It referred to such laws as one type of "a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence *without undertaking warrantless nonconsensual blood draws*." *Id*. at 1566. The Court stated that the efficacy of those laws was the consequences imposed when a driver withdrew consent. The Court stated, "*Such laws impose significant consequences when a motorist withdraws consent*; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id*. (emphasis added).

Considering the Court's action in *Aviles* and its reasoning and statements in *McNeely*, we hold that an implied consent statute such as Washington's and Idaho's does not justify a warrantless blood draw from a driver who refuses to consent, as did Aviles, or objects to the blood draw, as did Defendant in this case. Consent to a search must be voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 232-33 (1973). Inherent in the requirement that consent be

voluntary is the right of the person to withdraw that consent. *See McNeely*, 569 U.S. at ___, 133 S.Ct. at 1566 (recognizing that a motorist can withdraw consent). By objecting to the blood draw, Defendant withdrew his implied consent. Therefore, the district court did not err in granting the motion to suppress.

### III.
### Conclusion.

The order granting Respondent's motion to suppress is affirmed.

Chief Justice BURDICK, Justices J. JONES, HORTON and Senior Justice Pro Tem WALTERS **CONCUR.**