**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41942**

| | | |
|---|---|---|
| CULLEN R. SIMS, | ) | 2015 Opinion No. 52 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: August 24, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Summary dismissal of petition for post-conviction relief, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Cullen R. Sims appeals from the district court's summary dismissal of his petition for post-conviction relief. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts in this case are set forth in this Court's unpublished decision in Sims' direct appeal, *State v. Sims*, Docket No. 41078 (Ct. App. July 17, 2014), as follows:

> On August 9, 2012, police observed Sims driving and attempted to stop him in order to serve him with an arrest warrant for a parole violation. Sims failed to stop, rammed his vehicle into a police vehicle, struck another police vehicle, and sped away. While fleeing, Sims collided with a third party. The crash resulted in an injury to the third party and an injury to Sims'[ ] passenger. Sims was transported to a hospital for treatment of his injuries and a possible drug overdose.

1

Our record contains additional facts that while Sims was in the hospital, he was subjected to a warrantless blood draw to test for alcohol or other intoxicating substances. Sims asserts that the blood draw was performed while he was unconscious and without his consent.

Pursuant to a plea agreement, Sims pled guilty to aggravated driving under the influence (DUI), I.C. § 18-8006. The district court sentenced Sims to a unified term of fifteen years with seven and one-half years determinate. In the time between the entry of Sims' guilty plea and his sentencing, the United States Supreme Court issued its opinion in *Missouri v. McNeely*, ____ U.S. ___, 133 S. Ct. 1552, 1568 (2013), holding that the natural dissipation of alcohol in the bloodstream does not constitute a per se exigency to justify conducting a blood test without a warrant. *Id.* at ___, 133 S. Ct. at 1568.

Sims filed a petition for post-conviction relief, alleging ineffective assistance of counsel on the basis that his counsel did not file a motion to suppress his blood test results. Specifically, Sims argued that the newly issued *McNeely* opinion provided a valid basis for filing a motion to suppress.[1] In his petition, he also requested that he be allowed to file such motion and if unsuccessful, then to withdraw his guilty plea or file an appeal. The district court summarily dismissed Sims' claim, concluding that Sims failed to establish a genuine issue of material fact as to whether his counsel's performance was deficient in not filing the motion to suppress his blood test results. Sims timely appeals.

## II.

## ANALYSIS

On appeal, Sims alleges that he raised an issue of material fact regarding whether his counsel was ineffective for failing to file a motion to withdraw his guilty plea and a motion to suppress his blood test results. Relying on *McNeely*, Sims contends that his blood was drawn in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. He argues that *McNeely* provides a basis for him to withdraw his guilty plea and to suppress the results of his blood draw. Accordingly, he argues his counsel was ineffective for failing to file such motions.

---

[1]     Sims also alleged his counsel was ineffective for not appealing the length of his sentence, and for not filing a motion to suppress the statements he made while he was in the hospital. However, Sims does not raise these issues on appeal.

2

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding, governed by the Idaho Rules of Civil Procedure. I.C. § 19-4907; *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like plaintiffs in other civil actions, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action, however, in that it must contain more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The petition must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached, or the petition must state why such supporting evidence is not included. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or it will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.C. § 19-4906(c). When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Wolf*, 152 Idaho at 67, 266 P.3d at 1172; *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036,

3

1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714; *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 868, 876 P.2d 148, 150 (Ct. App. 1994).

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009); *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007); *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998); *Murphy v. State*, 143 Idaho 139, 145, 139 P.3d 741, 747 (Ct. App. 2006); *Cootz v. State*, 129 Idaho 360, 368, 924 P.2d 622, 630 (Ct. App. 1996). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008); *Roman*, 125 Idaho at 647, 873 P.2d at 901. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Sheahan*, 146 Idaho at 104, 190 P.3d at 923; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho

4

367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). Where, as here, the petitioner was convicted upon a guilty plea, to satisfy the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted ineffective assistance. *Lint v. State*, 145 Idaho 472, 477, 180 P.3d 511, 516 (Ct. App. 2008). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the *Strickland* test. *Id.* at 477-78, 180 P.3d at 516-17.

**A.    Withdrawal of Guilty Plea**

Sims first argues his counsel was ineffective for failing to advise him of the ramifications of *McNeely*, and had he been properly advised, there is a reasonable probability that a motion to withdraw his guilty plea would have been successful. He asserts that because the *McNeely* opinion had not yet been issued at the time he entered his guilty plea, he was unaware of a potential defense available to him, which could have been asserted through a motion to suppress.

5

In a motion to withdraw a guilty plea prior to sentencing, a defendant must demonstrate a just reason for withdrawing the plea. Idaho Criminal Rule 33(c); *State v. Arthur*, 145 Idaho 219, 222, 177 P.3d 966, 969 (2008). A constitutional defect in the plea is not necessary in order to show a just reason. *State v. Stone*, 147 Idaho 330, 333, 208 P.3d 734, 737 (Ct. App. 2009). We have previously explained that a just reason is "a plausible reason to justify the withdrawal." *State v. Rose*, 122 Idaho 555, 559, 835 P.2d 1366, 1370 (Ct. App. 1992).

Sims argues that a motion to suppress his blood results would likely have been granted, which would have provided a just reason to withdraw his guilty plea. This argument is without merit as we have recently addressed this issue in *State v. Boehm*, 158 Idaho 294, 346 P.3d 311 (Ct. App. 2015). In *Boehm*, prior to sentencing, Boehm moved to withdraw her guilty plea arguing that *McNeely* invalidated Idaho's implied consent scheme. On appeal, this Court affirmed the magistrate's denial of Boehm's motion, holding that because *McNeely* did not directly address the issue that would have been raised by Boehm concerning implied consent, the issuance of *McNeely* did not provide a just reason for her to withdraw her guilty plea. *Id.* at 303-04, 346 P.3d at 320-21. The reasoning from *Boehm* is equally applicable here. Had Sims been allowed to withdraw his guilty plea, the issue that he would have raised in a motion to suppress would be whether his implied consent constituted a valid exception to the warrant requirement. As discussed below, since *McNeely* did not address the issue of implied consent, Sims has failed to provide a just reason to withdraw his guilty plea by relying on *McNeely*.

## B. Motion to Suppress

Sims argues that based upon the holding of *McNeely*, a motion to suppress his blood test results would have been granted because his blood was taken without a warrant and without his affirmative consent, in violation of the Fourth Amendment. Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014). Therefore, warrantless forced blood draws are generally violative of both the state and federal constitutions. *McNeely*, ____ U.S. at ___, 133 S. Ct. 1552, 1558; *Wulff*, 157 Idaho at 419, 337 P.3d at 578. However, the warrant requirement does not apply if the person subjected to the search has consented. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). Consent must be voluntary

and not the result of duress or coercion, either direct or implied. *Schneckloth*, 412 U.S. at 248; *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980); *Schneckloth*, 412 U.S. at 226-27; *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Mere acquiescence to a claim of authority by a law enforcement officer does not constitute consent. *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968); *State v. Smith*, 144 Idaho 482, 488, 163 P.3d 1194, 1200 (2007); *State v. Tietsort*, 145 Idaho 112, 118, 175 P.3d 801, 807 (Ct. App. 2007). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *Hansen*, 138 Idaho at 796, 69 P.3d at 1057. The State bears the burden to prove consent by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *Hansen*, 138 Idaho at 796, 69 P.3d at 1057; *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997).

Consent, once given, may also be revoked, for "[i]nherent in the requirement that consent be voluntary is the right of the person to withdraw that consent." *State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014). Thus, after a defendant has revoked consent, officers no longer may act pursuant to that initial voluntary consent. *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004). Of course, an individual may renew his consent after revoking it. *Id.*

Relying on *Wulff* and *State v. Arrotta*, 157 Idaho 773, 339 P.3d 1177 (2014), Sims claims that following *McNeely* the Idaho Supreme Court has held that Idaho's implied consent law violated the Fourth Amendment, and therefore, his motion to suppress would have been granted. This Court has explained the state of Idaho's implied consent statute in light of the United States Supreme Court's decision in *McNeely*, _____ U.S. ___, 133 S. Ct. 1552, which is contrary to Sims' contention:

> In *Wulff*, our Supreme Court held that the district court "properly concluded that Idaho's implied consent statute was not a valid exception to the warrant requirement." *Wulff*, 157 Idaho at 423, 337 P.3d at 582. At first glance, this holding would appear to preclude the State from continuing to rely on the implied consent statute to provide the requisite consent for a warrantless blood draw in a suspected DUI case. However, in addressing the constitutionality of the statute, the *Wulff* Court made a salient distinction. It identified "two hurdles" the statutory consent must overcome to "qualify as voluntary: (1) drivers give their initial consent voluntarily and (2) drivers must continue to give voluntary

7

consent." *Id*. The Court considered that the first hurdle was met by the statute: "Drivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads *voluntarily*." *Id*. (emphasis added) (citing *Diaz*, 144 Idaho at 303, 160 P.3d at 742). It was the second hurdle the court found problematic, noting that Idaho appellate decisions interpreting section 18-8002 had held that a person could not revoke his statutorily implied consent. "Because Idaho does not recognize a driver's right to revoke his implied consent," the Court held, "Idaho has a per se exception to the warrant requirement." *Wulff*, 157 Idaho at 423, 337 P.3d at 582.[2] Thus, the Court held, it was overruling previous case law "to the extent that they applied Idaho's implied consent statute as an irrevocable per se rule that constitutionally allowed forced warrantless blood draws." *Id*.

That Idaho's implied consent statute continues to be valid, albeit in a form that is revocable, is supported by two subsequent cases issued by our Supreme Court. Approximately one month after *Wulff*, the Court decided *Halseth*, 157 Idaho 643, 339 P.3d 368, holding:

> [A]n implied consent statute such as . . . Idaho's does not justify a warrantless blood draw from a driver who refuses to consent . . . or objects to the blood draw . . . . Inherent in the requirement that consent be voluntary is the right of the person to withdraw that consent.

*Id.* at 646, 339 P.3d at 371.[3] Then, several weeks later in *State v. Arrotta*, 157 Idaho 773, 774, 339 P.3d 1177, 1178 (2014), the Court cited to *Wulff* and *Halseth* for the proposition that "a suspect can withdraw his or her statutorily implied consent to a test for the presence of alcohol." Taken together, these decisions lead to the conclusion that Idaho's law regarding statutorily implied consent retains validity, but that consent may be terminated by a defendant's refusal, protest, or objection to alcohol concentration testing.

*State v. Smith*, ___ Idaho ___, ___ P.3d ___ (Ct. App. June 15, 2015) (footnotes omitted) (internal citations omitted).

We turn to the application of the facts in this case to the current state of the law. As Sims recognizes, his warrantless blood draw was not justified by the exigent circumstances exception to the warrant requirement pursuant to *McNeely*. However, Sims' warrantless blood draw was justified by Idaho's implied consent statute, a separate and distinct exception to the warrant requirement. Any person who drives or is in actual physical control of a motor vehicle in Idaho consents to be tested for alcohol at the request of a peace officer with reasonable grounds to

---

[2] Earlier in the opinion, the Court also focused on the irrevocability of the statute: "A holding that the consent implied by statute is irrevocable would be utterly inconsistent with the language in *McNeely* denouncing categorical rules that allow warrantless forced blood draws." *Wulff*, 157 Idaho at 422, 337 P.3d at 581.

[3] *Halseth* does not cite to or reference *Wulff*.

believe the person drove under the influence, which includes consent to draw blood. I.C. § 18-8002(1), (10). However, the driver may withdraw his or her consent by affirmatively resisting the blood draw. *Halseth*, 157 Idaho at 646, 339 P.3d at 371. Here, Sims impliedly consented to be tested for alcohol by driving a motor vehicle in Idaho. At no point did Sims object to or resist the blood draw. His alleged unconsciousness does not effectively operate as a withdrawal of his consent. Therefore, Sims' statutorily implied consent was effective at the time of the blood draw. Sims has not met his burden of proving that had his counsel filed a motion to suppress, it would have been granted.

## III.

## CONCLUSION

Sims failed to demonstrate that the district court erred in granting summary dismissal of his petition for post-conviction relief. Therefore, the district court's order dismissing Sims' petition for post-conviction relief is affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.